**United States District Court**
For the Northern District of California

1

2

3                     UNITED STATES DISTRICT COURT

4                     NORTHERN DISTRICT OF CALIFORNIA

5    FEIYA COSMETICS, LLC,                    Case No.  C-10-00967 JCS

6
            Plaintiff,                        **REPORT AND RECOMMENDATION
7                                             RE:**
        v.
8                                             **1)  MOTION FOR DEFAULT
                                              JUDGMENT AGAINST DEFENDANTS
     BEYOND BEAUTY INTERNATIONAL,             QUYNH DAO VIDEO AND HUNG TRAN
9    LLC, ET AL.,                             [Docket No. 89]**

10          Defendants.
     _____/        **2) MOTION FOR DEFAULT JUDGMENT
11                                            AGAINST BEYOND BEAUTY
                                              INTERNATIONAL, LLC; JENNY TRAN;
12                                            AND ALEX SAVASTANO [Docket No. 90]**

13

14

15   **I.      INTRODUCTION**

16          In this trademark infringement action, Plaintiff FEIYA COSMETICS, LLC ("Feiya") brings

17   two motions seeking entry of default judgment, the first against Defendants Quynh Dao Video

18   ("QDV") and its alleged owner, Hung Tran (hereinafter, "QDV Motion"), and the second against

19   Defendant Beyond Beauty International, LLC ("Beyond Beauty") and its alleged owners, Jenny

20   Tran and Alex Savastano (hereinafter "Beyond Beauty Motion").  Feiya seeks separate awards of

21   statutory damages, attorneys' fees and costs against the two entities and their owners, as well as

22   injunctive relief.  A hearing on the Motions was held on Friday, May 20, 2011.  At the hearing, the

23   Court requested supplemental materials to address its concerns relating to personal jurisdiction and

24   other matters, to be filed no later than July 1, 2011.  Plaintiff requested an extension of time to file

25   these materials to August 19, 2011 and the Court granted Plaintiff's request.  Plaintiff filed

26   supplemental materials in support of the Motions on that date.  For the reasons stated below, it is

27   recommended that the QDV Motion be DENIED.  It is recommended that the Beyond Beauty

28   Motion be GRANTED as to Beyond Beauty and Jenny Tran and DENIED as to Alex Savastano.

United States District Court

For the Northern District of California

## II.     BACKGROUND

Plaintiff Feiya is a limited liability company doing business in the Northern District of California with its principal place of business in San Jose, California.  First Amended Complaint ("FAC") ¶ 2.  Feiya was founded in 2002 and sells a line of cosmetic products, including whitening creams, moisturizers, acne creams, anti-wrinkle creams and sun block, that sell on retail for around $25 to $45 per item.  FAC, ¶ 18.  Feiya's most popular products are its Day Cream and Night Cream.  *Id*.  Feiya is the owner of U.S. Trademark Registration No. 2,843,983 ("Feiya Mark"), which was issued for cosmetic products on May 18, 2004.  *Id*., ¶ 17; *see also* Declaration of On Lu in Support of Motion for Default Judgment Against Quynh Dao Video and Hung Tran ("Lu Decl. re QDV Motion"), Ex. 1 (trademark registration for Feiya Mark).  Plaintiff alleges that as a result of its substantial investment in its products, Feiya has become a well-known brand and its mark has acquired fame and secondary meaning in the field of cosmetics.  FAC, ¶¶ 20-21.  Since Feiya was founded, it has been the sole authorized distributor in the United States for all Feiya-branded products.  *Id*., ¶ 22.  Feiya has never granted a license to use the Feiya Mark to any other person or entity.  *Id*.

Feiya filed the complaint in this action on March 5, 2010, naming numerous defendants,[1] including QDV, Beyond Beauty, and the alleged owners of Beyond Beauty, Jenny Tran and Alex Savastano.  Feiya alleged that the defendants had violated federal trademark law and various California state laws by selling counterfeit versions of Feiya's Day and Night Cream, and that they had refused to stop infringing despite receiving cease-and-desist letters from Feiya demanding that they do so.  On September 3, 2010, Feiya filed an amended complaint in which it added as a defendant Hung Tran, the alleged owner of QDV.

With respect to Beyond Beauty, Feiya alleged that Beyond Beauty sold cosmetics products over the internet at the following websites: 1) www.foreverbeautysecrets.com; 2) www.beyondbeauty online.com; and 3) www.bodybeautyonline.com.  FAC, ¶ 33.  Feiya further alleged that on June 2, 2009 and again on June 10, 2009, Feiya, through a shopper, obtained Day and

---

[1]All of the defendants named in the complaint except those as to which Plaintiff seeks default judgment have been dismissed from the action *See* Docket Nos. 48, 56, 105.

**United States District Court**
For the Northern District of California

1   Night Cream units sold by Beyond Beauty that were labeled with counterfeit packaging. *Id.*, ¶¶ 34-

2   35 & Ex. A (receipt of purchase for one unit of Day and Night Cream dated June 2, 2009 from

3   www.foreverbeautysecrets.com) and Ex. B (receipt of purchase for one unit of Day and Night Cream

4   dated June 10, 2009 from www.foreverbeautysecrets.com).  In letters dated July 2, 2009 and August

5   11, 2009, Feiya's counsel notified Beyond Beauty that it was infringing Feiya's trademark and

6   demanded that Beyond Beauty cease all infringing activity.  *Id.* ¶ 36 & Ex. C (letter from Feiya's

7   counsel demanding that Beyond Beauty cease and desist from all infringing acticvity).  Feiya alleged

8   that despite receiving Feiya's notices of infringement, Beyond Beauty refused to cease and desist

9   from its infringing activity.  *Id.*, ¶ 37.

10   As to QDV, Plaintiff alleged that QDV is a retail store in New Orleans, Louisiana that rents

11   and sells DVDs and videos and sells cosmetics.  *Id.*, ¶ 50.  According to Feiya, on August 12, 2008,

12   Feiya through a shopper obtained one Day Cream and one Night Cream unit sold by QDV, which

13   were labeled with a counterfeit Feiya mark.  *Id.*, ¶ 51 & Ex. J (showing a picture of one box of Day

14   Cream and one box of Night Cream with Feiya mark, a picture of two cardboard boxes stamped with

15   "New Formula" that do not carry the Feiya Mark, a picture of a business card for QDV, a picture of

16   a diet product that is not at issue in this case and a picture of what appears to be the back of a

17   business card with the numbers 35, 35 and 70 in a column suggesting a price tally).[2]

18   On August 20, 2009, Feiya's counsel notified QDV of its infringement of Feiya's federally

19   registered trademark and demanded that QDV cease its infringing activity.  *Id.*, ¶ 52 & Ex. K (a

20   letter dated August 20, 2008 from Feiya's counsel based in San Jose California to QDV demanding

21   that it cease and desist its infringing activity).  Nonetheless, QDV continued to sell products labeled

22   with counterfeit Feiya packaging.  *Id.*, ¶ 53.  Feiya alleges, in particular, that on July 27, 2009, it

23   obtained through a shopper two Night Cream units packaged with the counterfeit Feiya Mark.  *Id.*,

24   54.  In support of this allegation, Feiya offered an exhibit showing "photos of the products

25   purchased."  *Id.* & Ex. L.  The attached exhibit is a picture of two cardboard boxes that are stamped

26

27   [2]The Court notes that although Exhibit J to the First Amended Complaint is described in the
complaint as including a "copy of the receipt of purchase," nothing in the pictures provided appears to
28   be a receipt.

**United States District Court**
For the Northern District of California

1    "New Formula" and do not appear to include the Feiya Mark.  *Id.*, Ex. L.  Feiya further alleges that

2    on August 12, 2009, Feiya obtained, through a shopper, one Day and one Night Cream unit labeled

3    with the Feiya counterfeit mark, sold by QDV.  *Id.*, ¶ 55 & Ex. M (hand-written receipt with "Quyn

4    Dao" written at the top, reflecting sale of one Day Cream and on Night Cream on August 12, 2009).

5            Plaintiff asserted the following claims in its First Amended Complaint: 1) counterfeiting,

6    under 15 U.S.C. §§ 1114-1117, based on use of a mark identical to Feiya's mark to market

7    Defendants' products as authentic Feiya products (against, *inter alia*, Beyond Beauty and QDV); 2)

8    contributory counterfeiting based on allegation that owners of QDV and Beyond Beauty knowingly

9    provided goods and services necessary to those entities' intentional counterfeiting (against, *inter*

10   *alia*, Jenny Tran, Alex Savastano, and Hung Tran); 3) trademark infringement, under 15 U.S.C. §§

11   1114-1117, based on alleged unauthorized use of Feiya Mark (against, *inter alia*, Beyond Beauty

12   and QDV); 4) contributory trademark infringement based on allegation that owners of QDV and

13   Beyond Beauty knowingly provided goods and services necessary to those entities' trademark

14   infringement (against, *inter alia*, Jenny Tran, Alex Savastano, and Hung Tran); 5) trademark

15   dilution, under 15 U.S.C. § 1125(c) (against, *inter alia*, Beyond Beauty and QDV); 6) False

16   designation of origin, under 15 U.S.C. § 1125(a) (against, *inter alia*, Beyond Beauty and QDV); 7)

17   Unfair competition, under 15 U.S.C. § 1125(a) (against all defendants); 8) state statutory and

18   common law trademark, counterfeiting, infringement, dilution and unfair competition, under Cal.

19   Bus. & Prof. Code §§ 14320, 14330 and 17200 *et seq.* (against all Defendants); 9) Intentional

20   interference with prospective economic advantage, under Cal. Bus. & Prof. Code § 17200 (against

21   all defendants); and 10) negligent interference with prospective economic advantage (under Cal.

22   Bus. & Prof. Code § 17200).

23           In its Demand for Judgment, Plaintiff requests, *inter alia*, an injunction prohibiting

24   Defendants from using the Feiya Mark or distributing counterfeit Feiya goods, statutory damages of

25   $1,000,000 under 15 U.S.C. § 1117(c)(2), an award of attorneys' fees and costs, treble damages, and

26   prejudgment and postjudgment interest.

27

28

4

United States District Court

For the Northern District of California

1    Defendants QDV, Beyond Beauty, Jenny Tran, Alex Savastano and Hung Tran did not

2  appear in this action and default has been entered against them by the Clerk.  *See* Docket Nos. 24

3  (QDV), 53 (Savastano, Beyond Beauty), 66 (Jenny Tran), 85 (Hung Tran).

4    In the QDV Motion, Feiya seeks entry of judgment against QDV and its alleged owner, Hung

5  Tran, as well as an injunction prohibiting further counterfeiting and trademark infringement,

6  statutory damages in the amount of $1,000,000.00, attorneys' fees in the amount of $34,444.00 and

7  costs in the amount of $1,897.41.  In support of the Motion, Feiya cites to the exhibits filed with the

8  First Amended Complaint reflecting sales of six units of Feiya counterfeit products between August

9  12, 2008 and August 12, 2009.  QDV Motion at 16.  Feiya argues that the six sales that were

10  documented on separate days over a single year support the conclusion that QDV's sales were

11  "probably significant." *Id*. at 17.  Feiya also provides a declaration by its counsel stating that a

12  second cease-and-desist letter was sent to QDV on April 14, 2009 and another letter was sent on

13  May 27, 2010 alerting QDV that default had been entered against it. Lu Decl. re QDV Motion, ¶¶ 5-

14  6 & Exs. 1-2.  Feiya asserts in the Motion that personal jurisdiction exists because QDV received

15  these cease-and-desist letters, which stated that Feiya is based in San Jose California, and therefore

16  knew that its infringing actions were harming an entity based in California.  QDV Motion at 7.  In

17  support of this contention, Feiya cites this Court's decision in *Ringcentral v. Quimby*, 711 F.Supp.

18  2d 1048 (N.D.Cal., 2010), *vacated in part by* 2011 WL 1464896 (N.D.Cal. Apr 18, 2011) (setting

19  aside default judgment after Defendant appeared and showed sufficient cause to excuse default).

20    Lu states that attorneys fees "in this matter through February 16, 2011" total $32,314.00,

21  based on: 1) 6 hours by partner Daniel Mount at an hourly rate of $515; 2) 27.8 hours by Daniel

22  Fingerman, a junior partner, at an hourly rate of $350; and 3) 71.4 hours by associate On Lu at an

23  hourly rate of $275.00.  *Id*.  Lu states further that he anticipates that Daniel Mount will spend 2

24  hours and Lu himself will spend 4 hours preparing for and attending the motion hearing and on that

25  basis requests an additional $2,130.00 in attorneys' fees.  *Id*., ¶ 8.  No time sheets or break-down of

26  hours were provided in support of the Motion.  Lu states that the rates charged are "typical of what is

27  charged by other intellectual property litigation boutiques in the San Francisco Bay Area."  *Id*., ¶ 7.

28  Finally, Lu states that "Feiya has incurred costs of $1,897.41 related to service of process on

**United States District Court**
For the Northern District of California

1  Defendants in New Orleans, LA, and the private investigation and purchase of counterfeit products

2  from Defendants." *Id.*, ¶ 10.  No itemization of costs was provided in support of the Motion.

3      In the Beyond Beauty Motion, Feiya seeks entry of judgment against Beyond Beauty and its

4  owners, Alex Savastano and Jenny Tran, as well as an injunction prohibiting further counterfeiting

5  and trademark infringement,[3] statutory damages in the amount of $1,000,000, attorneys' fees in the

6  amount of $28,898.50, and costs in the amount of $1,108.84.  In support of the Motion, Feiya offers

7  a declaration by David Lieu, an owner of Feiya, documenting the alleged counterfeiting by Beyond

8  Beauty.  *See* Declaration of David Lieu in Support of Motion for Default Judgment Against Beyond

9  Beauty International, L.L.C.; Jenny Tran; and Alex Savastano ("Lieu Decl.").  Lieu states in his

10  declaration that he is aware that Beyond Beauty sells counterfeit products on three websites: 1)

11  www.ForeverBeautySecrets.com; 2) www.BeyondBeautyOnline.com; and 3)

12  www.2DayDietUSA.com.[4] *Id.*, ¶ 3.  He further states that after cease and desist letters were sent to

14  [3]Plaintiff requests that the following injunction be entered against Beyond Beauty, Jenny Tran and Alex Savastano:

16  3. Defendants, their officers, agents, servants, attorneys, employees, privies, successors, and assigns, and all persons in active concert or participation with any of them be enjoined from:

17  a. Using, displaying, advertising, copying, registering, imitating, counterfeiting or infringing upon the Feiya Mark;

19  b.  Using or displaying the Feiya Mark or name or colorable imitations thereof as a business name, domain name, or mark in any written, oral or electronic advertisements, including on any website owned and/or controlled by Defendants;

21  c.  Using the word "Feiya" or any other word that is confusingly similar to Feiya as or as part of any trademark, service mark, brand name, trade name, or other business or commercial designation, in connection with the sale, offering for sale, distribution, advertising or promotion of any product or service;

23  d    Making representations that Defendants' products or services are in any way sponsored, approved, authorized or affiliated with Feiya;

25  e.  Otherwise infringing upon the "Feiya" name or the Feiya Mark. 4. Defendants shall transfer custody of all products bearing the Feiya name or Feiya.Mark in its possession, custody, or control to Feiya.

Proposed Order, Docket No. 90.

28  [4]The first two websites were referenced in Feiya's Complaint and First Amended Complaint, but the third website, www.2DayDietUSA.com, was not referenced in Plaintiff's complaint.

1   Beyond Beauty on July 2, 2009 and August 26, 2009, Beyond Beauty continued to sell infringing

2   products; in particular Lieu states that he saw infringing products for sale at

3   www.2DayDietUSA.com on August 26, 2009 and August 31, 2009.  *Id.*, ¶ 4.  Lieu states that he

4   contacted the domains that hosted the three websites and requested that the infringing material be

5   removed or disabled.  *Id.*, ¶¶ 5-7.

6       Feiya also offers a declaration by its counsel, On Lu, in support of the Beyond Beauty

7   Motion.  Declaration of On Lu in Support of Motion for Default Judgment Against Beyond Beauty

8   International, LLC; Jenny Tran; and Alex Savastano ("Lu Decl. re Beyond Beauty Motion").  Lu

9   states that he determined that the three websites referenced in the Lieu Declaration were affiliated

10  with Beyond Beauty based on: 1) a search on WhoIs.com revealing that Jenny Tran is listed as the

11  owner of www.ForeverBeautySecrets,com; 2) contact information for

12  www.BeyondBeautyOnline.com including "Beyond Beauty" as the first line of the company

13  address; and 3) contact information for www.2DayDietUSA.com including "Beyond Beauty" as the

14  first line of the company address. *Id.*, ¶ 4 & Exs. 1-3.  Lu also provides a copy of Beyond Beauty's

15  corporate statement of record on file with the California Secretary of State.  *Id.*, ¶ 5 & Ex. 4

16  (Business Entity Detail reflecting that Beyond Beauty is a suspended California corporation based in

17  San Diego, California).

18      Lu states that attorneys' fees "to date billed and charged is $27,558.50," based on: 1) 2.1

19  hours by partner Daniel Mount at an hourly rate of $515; 2) 13.3 hours by Daniel Fingerman, a

20  junior partner, at an hourly rate of $350; and 3) 47.2 hours by associate On Lu at an hourly rate of

21  $275.00.  *Id.*, ¶ 6.  Lu states further that he anticipates that Daniel Mount will spend 1 hour and Lu

22  himself will spend 3 hours preparing for and attending the motion hearing and on that basis requests

23  an additional $1,340.00 in attorneys' fees.  *Id.*, ¶ 7.  No time sheets or break-down of hours were

24  provided in support of the Motion.  Lu states that the rates charged are "typical of what is charged by

25  other intellectual property litigation boutiques in the San Francisco Bay Area."  *Id.*, ¶ 6.  Finally, Lu

26  states that Feiya has incurred costs in the amount of $1,108.84 related to service of process on

27  Defendants in San Diego California, and the private investigation and purchase of counterfeit

28  products from Defendants.  Id., ¶ 9.

**United States District Court**
For the Northern District of California

1    Following the hearing on the Motions, Plaintiff submitted supplemental materials addressing

2    issues raised by the Court at the hearing.  As set forth further below, Plaintiff provided additional

3    evidence and briefing as to: 1)  the existence of personal jurisdiction over QDV and Hung Tran; 2)

4    the degree of involvement in the alleged infringement of Alex Savastano; and 3) the appropriate

5    amount of statutory damages, attorneys's fees and costs.  Plaintiff revised downward the amount of

6    its request for statutory damages.

7    **III.    ANALYSIS**

8       **A.    Personal Jurisdiction**

9       As a preliminary matter, this Court has an affirmative obligation to determine whether or not

10   it has personal jurisdiction over the Defendants against who Feiya seeks entry of default judgment.

11    *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (holding that the court properly raised sua sponte

12   the question of whether there was personal jurisdiction over Iraq before determining whether default

13   judgment should be entered).  In *Tuli*, the Ninth Circuit explained that where a plaintiff seeks default

14   judgement, the court may not assume the existence of personal jurisdiction, even though ordinarily

15   personal jurisdiction is a defense that may be waived, because a judgment in the absence of personal

16   jurisdiction is void.  *Id*.  Where there are questions about the existence of personal jurisdiction in a

17   default situation, the court should give the plaintiff the opportunity to establish the existence of

18   personal jurisdiction.  *Id*.

19      Personal jurisdiction in this District is proper provided it is consistent with the California

20   long-arm statute and if it comports with due process of law.  *Boschetto v. Hansing*, 539 F.3d 1011,

21   1021-22 (9th Cir. 2008).  Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal

22   courts in California may exercise jurisdiction to the extent permitted by the Due Process Clause of

23   the Constitution.  *Id*.; *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328

24   F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Code Civ. Proc. §410.10).  The Due Process Clause

25   allows federal courts to exercise jurisdiction where either: 1) the defendant has had continuous and

26   systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the

27   court; or 2) the defendant has had sufficient minimum contacts with the forum to subject him or her

28   to the specific jurisdiction of the court.  *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

**United States District Court**
For the Northern District of California

1    The Court is satisfied that personal jurisdiction exists as to Beyond Beauty on the basis that it

2    is a California corporation (albeit suspended) with a physical address in California address.  *See*

3    *Transamerica Corp. v. Compana, LLC.*, 2005 WL 2035594, at * 3 (N.D.Cal., Aug. 22, 2005)

4    (holding that general jurisdiction existed over defendant that was a California corporation with a

5    physical address in California).  As such, Beyond Beauty is subject to the general jurisdiction of

6    Beyond Beauty.

7        Further, the Court finds that there is personal jurisdiction over Jenny Tran on the basis that

8    she is the alleged owner of Beyond Beauty, which is a California corporation.  *See Brayton Purcell*

9    *LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127 (9th Cir., 2010) (holding that in determining

10   whether personal jurisdiction exists, "uncontroverted allegations in [plaintiff's] complaint must be

11   taken as true").  The existence of personal jurisdiction over Jenny Tran is also supported by a

12   declaration by Alex Savastano, Jenny Tran's ex-husband, submitted by Feiya following the motion

13   hearing.  Savastano states that Jenny Tran was the sole owner and employee of Beyond Beauty, and

14   that she operated Beyond Beauty out of their home in San Diego, California.  *See* Declaration of

15   Alex Savastano ("Savastano Decl."), ¶¶ 5, 9.

16       Finally, the Court finds that it has personal jurisdiction over Alex Savastano on the basis of

17   his declaration, in which he states that he is a chiropractor at Miramar Family Chiropractic, in San

18   Diego, California, and that between 2005 and 2010 he was married to and resided with Jenny Tran in

19   San Diego, California.  *Id.*, ¶¶ 2, 4.  This evidence is sufficient to establish personal jurisdiction over

20   Alex Savastano.

21       With respect to QDV and Tran, there is no evidence of continuous and systematic ties to

22   California, as required to establish general jurisdiction and therefore, the Court turns to the question

23   of whether it may exercise personal jurisdiction over these defendants on the basis of specific

24   jurisdiction.  The courts apply a three-part test to determine whether specific jurisdiction exists:

25   (1) The nonresident defendant must do some act or consummate some transaction with the
     forum or perform some act by which he purposefully avails himself of the privilege of
26   conducting activities in the forum, thereby invoking the benefits and protections of its laws;
     (2) the claim must be one which arises out of or results from the defendant's forum-related
27   activities; and (3) exercise of jurisdiction must be reasonable.

28

1    *Id.* (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (quotation
2    marks omitted)).

3          In order to satisfy the first prong of the test, the defendant must have either purposefully
4    availed himself of the privilege of conducting business activities within the forum or purposefully
5    directed activities toward the forum.  *Id.*  Although the phrase "purposeful availment" is often used
6    to refer to both purposeful availment and purposeful direction, the Ninth Circuit distinguished the
7    two concepts in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); *see*
8    *also Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010).
9    Purposeful availment typically consists of action taking place in the forum that invokes the benefits
10   and protections of the laws of the forum, such as executing or performing a contract within the
11   forum.  *Schwarzenegger*, 374 F.3d at 802.  Purposeful direction usually consists of actions outside
12   the forum state that are directed at the forum and applies to suits sounding in tort.  *Id.* at 803.

13         Because Feiya's claims are based on trademark infringement, generally characterized as a
14   tort, personal jurisdiction may be found if QDV and Tran have purposefully directed their activities
15   at the forum.  *See Panavision*, 141 F.3d at 1322.  Purposeful direction exists when a defendant has
16   committed an act outside of the forum state that was intended to and does in fact cause injury within
17   the forum.  *Calder v. Jones*, 465 U.S. 783, 788-89 (1984).  Under the *Calder* "effects test" the
18   defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3)
19   causing harm that the defendant knows is likely to be suffered in the forum state.  *Brayton*, 606  F.3d
20   at 1128 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199,
21   1206 (9th Cir. 2006)).

22         The Ninth Circuit has emphasized that "'something more' than mere foreseeability [is
23   required] in order to justify the assertion of personal jurisdiction, . . . and that 'something more'
24   means conduct expressly aimed at the forum."  *Id.* at 1129 (citations omitted).  Thus, for example,
25   the Ninth Circuit held in *Brayton* that a defendant that had copied content from the plaintiff's
26   website and placed it on its own website was directly aimed at the forum because, under the facts of
27   that case, the defendant had intentionally entered into direct competition with the plaintiff for
28   customers within the forum.  *Id.*  This court reached a similar result in *Ringcentral v. Quimby*, 711

United States District Court

For the Northern District of California

10

United States District Court
For the Northern District of California

1   F.Supp. 2d 1048 (N.D.Cal., 2010), in which the Court concluded that the defendant in that case, like

2   the defendant in *Brayton*, had engaged in direct competition for customers in the forum state by

3   intentionally registering a domain name that included the plaintiff's trademark.  In contrast, in *Love*

4   *v. Associated Newspapers, Lt.*, 611 F.3d 601, 609 (9th Cir. 2010), the Ninth Circuit held that where

5   defendants' marketing activities were directed entirely at markets in United Kingdom and Ireland,

6   the conduct was not expressly aimed at California, even though the defendant was aware of the

7   plaintiff's activities in California.

8       In this case, there is no evidence that QDV and Tran directly aimed its activities toward

9   California.  There is no evidence that QDV or Tran engaged in any marketing aimed at California or

10  that it maintains a website of any kind, whether passive or active. The single receipt offered by Feiya

11  showing a sale is  handwritten and does not include the address of the store, suggesting that the sale

12  took place in the store, in New Orleans, Louisiana.  Even in its supplemental declarations, Feiya

13  does not provide details as to how it "obtained" the counterfeit products from QDV.  *See*

14  Supplemental Declaration of David Lieu in Support of Motion for Default Judgment ("Lieu Supp.

15  Decl."), ¶¶ 17-19.  In fact, the *only* connection with California is the cease-and-desist letters that

16  were sent to QDV stating that Feiya is a California corporation.  Feiya asserts that these letters

17  placed QDV and Tran on notice that their sale of infringing product harmed a business in California

18  and on that basis, the express aiming requirement is satisfied.  The Court disagrees.

19      In *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates*, the Seventh Circuit

20  expressly rejected a similar argument, reasoning as follows:

21          Finally, Mobile/Chicago points out that Mobile/Houston also had actual notice of
            Mobile/Chicago's trademark from the moment it received Mobile/Chicago's cease-and-desist
22          letter. From that time forward, Mobile/Chicago argues, Mobile/Houston was intentionally
            directing its tortious activities at Illinois in the same way that the defendants in *Calder*
23          intentionally directed their tortious activities at California. This argument finds no support in
            the case law. The cases that have found express aiming have all relied on evidence beyond
24          the plaintiff's mere residence in the forum state. *See, e.g., Calder*, 465 U.S. at 789-90, 104
            S.Ct. 1482 (defendants drew allegedly libelous story from forum state sources and newspaper
25          had its largest circulation in the forum state); *Tamburo*, 601 F.3d at 697 (defendants listed
            plaintiff's forum state address online and encouraged readers to harass him); *Panavision*, 141
26          F.3d at 1319, 1322 (defendant's intent to harm plaintiff in forum state could be inferred from
            his broader scheme of registering prominent trademarks as domain names for the purpose of
27          extorting money from the marks' owners). Here, by contrast, there is only the
            cease-and-desist letter. To find express aiming based solely on the defendant's receipt of that
28          letter would make any defendant accused of an intentional tort subject to personal

**United States District Court**
For the Northern District of California

1    jurisdiction in the plaintiff's home state as soon as the defendant learns what that state is.
2    *Calder* requires more.

3    623 F.3d 440, 446 (7th Cir. 2010).  This Court agrees that merely selling a product that is alleged to
4    infringe the plaintiff's trademark after receiving a cease-and-desist letter putting the defendant on
5    notice that the plaintiff resides in the forum state is not sufficient to meet the express aiming
6    requirement because at most, it establishes harm to plaintiff in the forum state was *foreseeable*.  The
7    Court therefore concludes that it may not exercise personal jurisdiction over Defendants QDV and
8    Hung Tran.

9         **B.    Legal Standard Regarding Entry of Default Judgment**

10         Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a
11   default judgment where the clerk, under Rule 55(a), has previously entered the party's default based
12   upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  Once a party's default
13   has been entered, the factual allegations of the complaint, except those concerning damages, are
14   deemed to have been admitted by the non-responding party. Fed. R. Civ. Proc. 8(b)(6); *see also*
15   *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977) (stating the general rule that "upon
16   default[,] the factual allegations of the complaint, except those relating to the amount of damages,
17   will be taken as true").  A defendant's default, however, does not automatically entitle the plaintiff
18   to a court-ordered default judgment.  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).

19         "Granting or denying a motion for default judgment is a matter within the court's discretion."
20   *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 2010 WL 2889490, at *2 (C.D. Cal. Jul.19, 2010)
21   (quoting *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLx), 2004 WL
22   783123, at *1 (C.D. Cal. Feb.13, 2004)).  The Ninth Circuit has directed that courts consider the
23   following factors in deciding whether to enter default judgment:

24       (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3)
         the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the
25       possibility of a dispute concerning the material facts; (6) whether defendant's default was the
         product of excusable neglect; and (7) the strong public policy favoring decisions on the
26       merits.

27   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986).

28

**United States District Court**
For the Northern District of California

**C.**   ***Eitel* Factors**

   **1.   Possibility of Prejudice to Plaintiff**

   The first Eitel factor considers whether plaintiffs will suffer prejudice if a default judgment is not entered.  *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  To the extent that Defendants have failed to appear in, or otherwise defend this action, Plaintiffs will be left without a remedy if default judgment is not entered in their favor.  Therefore, this factor weighs in favor of entry of default judgment.

   **2.   Merits of Plaintiffs' Substantive Claim and Sufficiency of the Complaint**

   The second and third *Eitel* factors weigh the substantive merit of the plaintiff's claims and the sufficiency of the pleadings to support these claims.  In order for these factors to weigh in favor of entering a default judgment, the plaintiffs must state a claim upon which they may recover. *Pepsico*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the allegations in the complaint must state a claim upon which the plaintiffs may recover). [5]

   **a.   Trademark Counterfeiting & Infringement Against Beyond Beauty**

   To prevail on a claim for trademark infringement, a holder of a registered service mark must show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive.  15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  Neither intent nor actual confusion are necessary to establish a likelihood of confusion.  *Id.*  The critical determination is, "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who made that product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir.

_____

   [5]At the hearing, Plaintiff stipulated to the dismissal of its state law claims.  Accordingly, the Court addresses only Plaintiff's federal claims.

United States District Court

For the Northern District of California

2008) (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003)) (quotation marks omitted).

Here, Plaintiff has alleged that it is the owner of the Feiya Mark and has provided the trademark registration in support of that assertion.  Feiya has also alleged that Beyond Beauty used the Mark to sell counterfeit products bearing the Feiya Marks and that these activities are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's counterfeit goods.  Therefore, Feiya has adequately alleged a claim for trademark infringement and counterfeiting against Beyond Beauty.

### b.   Contributory Trademark Counterfeiting & Infringement Against Alex Savastino and Jenny Tran

"To be liable for contributory trademark infringement, a defendant must have (1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 855 (1982)); *see also Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259 (9th Cir. 1996) ("Just as liability for copyright infringement can extend beyond those who actually manufacture or sell infringing materials, our law recognizes liability for conduct that assists others in direct trademark infringement").  Thus, in *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, the Ninth Circuit held that where a corporate officer had made statements on behalf of a corporate defendant that were actionable under the Lanham Act, that individual was subject to personal liability because he could not  "'hide behind the corporation where he is an actual participant in the tort.'"  173 F.3d 725, 734 (9th Cir. 1999) (quoting *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir.1978)).

Here, the Complaint alleges in support of the contributory infringement claim that Jenny Tran and Alex Savastano own Beyond Beauty.  As to Jenny Tran, Feiya has also provided a declaration showing that Jenny Tran is listed as the administrator for one of the Beyond Beauty Websites, *see* Lu Decl. re Beyond Beauty Motion, Ex. 1, as well as a supplemental declaration by Alex Savastano stating that Jenny Tran "ran Beyond Beauty on her own," that she was "the sole

United States District Court

For the Northern District of California

1    owner and employee," and that she "made all the decisions, including purchasing, sales, and

2    marketing decisions."  Savastano Decl., ¶ 9.  The Court finds on the basis of this evidence that the

3    contributory infringement claim is sufficiently alleged as to Jenny Tran and that the claim appears

4    to have merit.

5            In contrast, the declaration of Savastano that Feiya submitted with its supplemental

6    materials – and apparently credits – establishes that Savastano had no involvement in the infringing

7    activities at issue in the Complaint. *See* Savastano Decl., ¶¶ 8, 11.  In addition, although Savastano

8    was listed as agent for service of process for Beyond Beauty, he states that he did not know that he

9    had been designated as such until he received Plaintiff's cease-and-desist letters, at which time he

10   filed paperwork with the California Secretary of State to remove himself as agent for service of

11   process.  *Id*, ¶ 7.  Accordingly, the Court concludes that entry of default judgment is inappropriate

12   as to Defendant Alex Savastano.

13                   **c.        False Designation of Origin Against Beyond Beauty**

14           Plaintiff alleges that Beyond Beauty's use of the Feiya Mark constitutes false designation of

15   origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).  That section provides

16   as follows:

17           Any person who, or in connection with any goods or services, or any container for
18           goods, uses in commerce any word, term, name, symbol, or device or any
             combination thereof, or any false designation of origin, false or misleading
             description of fact, or false or misleading representation of fact, which -
19
20           (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation,
             connection, or association of such person with another person, or as to the origin,
21           sponsorship, or approval of his or her goods, services, or commercial activities by
             another person, or

22           (B) in commercial advertising or promotion, misrepresents the nature, characteristics,
23           qualities, or geographic origin of his or her or another person's goods, services, or
             commercial activities, shall be liable in a civil action by any person who believes that
             he or she is or is likely to be damaged by such act.
24

25   15 U.S.C. § 1125(a)(1).

26           In order to prevail in an action for false designation of origin, a plaintiff must show that: 1)

27   the terms or logos in question are valid and protectable trademarks; 2) the plaintiff owns these

28   marks as trademarks; 3) the plaintiff used these marks in commerce; and 4) the defendants "used

                                                         15

**United States District Court**
For the Northern District of California

1   terms or designs similar to plaintiff's marks without the consent of the plaintiff in a manner that is

2   likely to cause confusion among ordinary purchasers as to the source of the goods." *Chimney*

3   *Safety Inst. Of Am. v. Chimney King*, 2004 WL 1465699, at *2 (N.D. Cal. May 27, 2004) (citing

4   *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*,174 F.3d 1036, 1046-47 n.8 (9th Cir.

5   1999)).

6        Plaintiff has presented evidence satisfying all of the elements listed. Therefore, this factor

7   weighs in favor of granting a default judgment on Plaintiff's false designation of origin claim as to

8   Beyond Beauty.

9                   **3.    Amount at Stake**

10       The fourth *Eitel* factor balances the amount of money at stake in the claim in relation to the

11   seriousness of the defendant's conduct.  *Eitel*, 782 F.2d at 1471-72.

12       Here, Plaintiff initially requested $1,000,000.00 in statutory damages against Beyond

13   Beauty, Alex Savastano and Jenny Tran.  In its supplemental brief, Plaintiff revised its request

14   downward to $400,000 against Beyond Beauty and Jenny Tran, jointly and severally.[6]  *See*

15   Supplemental Brief in Support of Motion for Default Judgment Against Quynh Doa Video/ Hung

16   Tran and Beyond Beauty/Jenny Tran ("Supp. Brief") at17.   As discussed further below, the

17   damages requested by Feiya are commensurate with the harm that has been inflicted on Feiya as a

18   result of sales of counterfeit products over the past several years, which has been significant.  *See*

19   Supp. Lieu Decl., ¶¶ 7-16 (documenting "dramatic drop" in gross revenues beginning in 2008

20   resulting from counterfeiting activity and Feiya's efforts to combat counterfeiters).  In light of the

21   significant harm to Feiya that has resulted from the activities of counterfeiters like Beyond Beauty

22   and Jenny Tran, this factor favors entry of default judgment.

23                   **4.    Possibility of Dispute**

24       The fifth *Eitel* factor weighs the possibility that material facts may be in dispute.  *Eitel* 782

25   F.2d at 1471-72.  Here, because Defendants have failed to respond in this action, there is an absence

26   _____

27       [6]Although Feiya does not formally withdraw its request for entry of default judgment against
     Alex Savastano in its supplemental materials, it implicitly concedes that default judgment is not
     appropriate as to Savastano by requesting that damages be awarded against Beyond Beauty and Jenny

28   Tran only.

**United States District Court**
For the Northern District of California

1   of material facts in dispute in the record from which the Court may weigh this factor.  Therefore,

2   this factor is neutral.

3               **5.**        **Possibility of Excusable Neglect**

4         The sixth *Eitel* factor weighs whether the defendant's default may have been the product of

5   excusable neglect.  *Id.*   In this case, Feiya has presented evidence showing that: 1) Jenny Tran and

6   Beyond Beauty  failed to respond to the Complaint; 2)  Jenny Tran went to lengthy efforts to avoid

7   service of the complaint, *see* Lu Supp. Decl., ¶¶ 11-13; and 3) Jenny Tran and Beyond Beauty

8   continued their infringing conduct even after receiving cease-and-desist letters from Feiya.

9   Therefore, this factor weighs strongly  in favor of entry of default judgment.

10              **6.**        **Policy for Deciding Cases on the Merits**

11         The seventh *Eitel* factor balances the policy consideration that whenever reasonably

12   possible, cases should be decided upon their merits.  *Eitel*, 782 F.2d at 1472.  The existence of Rule

13   55(b) though, indicates, that this preference towards disposing of cases on the merits is not

14   absolute.  *Pepsico*, 238 F. Supp. 2d at 1177.  Here, because Jenny Tran and Beyond Beauty have

15   failed to respond or otherwise defend in this action, deciding the case upon the merits is not

16   possible and this factor is therefore neutral.

17         Weighing the factors discussed above, the Court concludes that default judgment should be

18   entered against Defendants Beyond Beauty and Jenny Tran on Plaintiffs' federal trademark claims.

19   As discussed above, because the evidence presented by Feiya as to Savastano indicates that he was

20   not involved in the alleged counterfeiting activity, default judgment should not be entered against

21   Savastano, who should be dismissed from the action with prejudice.

22   **D.**        **Remedies**

23             **1.**        **Injunctive Relief**

24         Injunctive relief is available to prevent future trademark infringement under the Lanham

25   Act.  15 U.S.C. § 1116.  "Injunctive relief is the remedy of choice for trademark and unfair

26   competition cases, since there is no adequate remedy at law for the injury caused by a defendant's

27   continuing infringement."  *Century 21*, 846 F.2d at 1180.  In order to obtain injunctive relief, a

28   plaintiff must show either: (1) probable success on the merits and the possibility of irreparable

**United States District Court**

For the Northern District of California

1   harm, or (2) the existence of serious questions on the merits and the balance of hardships tipping in

2   its favor.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (8th Cir. 1989).  In an action for

3   trademark infringement, "once the plaintiff establishes a likelihood of confusion, it is ordinarily

4   presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted."  *Id.*

5   Therefore, it is recommended that Feiya's request for injunctive relief be granted as to Beyond

6   Beauty and Jenny Tran.

### 2.   Statutory Damages

8        The Lanham Act provides that a trademark owner may recover: (1) defendant's profits; (2)

9   any damages sustained by the plaintiff; and (3) the costs of the action where a plaintiff has

10  established trademark infringement.  15 U.S.C. § 1117(a).  As an alternative to seeking damages in

11  the form of lost profits, a plaintiff may elect to receive an award of statutory damages in trademark

12  actions involving the use of a counterfeit mark.  15 U.S.C. § 1117(c).  Under the Lanham Act, a

13  court may award "not less than $1,000 or more than $200,000 per counterfeit mark per type of

14  goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C §

15  1117(c)(1).  A court may grant enhanced damages of up to $2,000,000 per counterfeit mark on a

16  finding of willful infringement.  15 U.S.C. § 1117(c)(2).  Willful infringement occurs when the

17  defendant knowingly and intentionally infringes on a trademark.  *See Earthquake Sound Corp. v.*

18  *Bumper Indus.*, 352 F.3d 1210, 1216-1217 (9th Cir. 2003).  Willfulness can also be inferred from a

19  defendant's failure to defend.  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494,

20  500 (C.D. Cal. 2003).  If statutory damages are elected, a court has wide discretion in determining

21  the amount of statutory damages to be awarded.  *Columbia Pictures Television, Inc. v. Krypton*

22  *Broad. of Birmingham*, 259 F.3d 1186, 1194 (9th Cir. 2001).  Although Section 1117(c) does not

23  give any specific guidance as to how a court should determine an appropriate statutory damage

24  award, many courts have looked to the following factors that are considered for the award of

25  statutory damages under an analogous provision of the Copyright Act:

26       (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff[s]; (3) the
         value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether
27       the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in
         providing particular records from which to assess the value of the infringing material
28       produced; and (7) the potential for discouraging the defendant.

**United States District Court**
For the Northern District of California

1   *Cartier v. Symbolix Inc.*, 544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008) (quoting *John Wiley & Sons,*

2   *Inc., et al. v. Kanzin Rukiz Entertainment and Promotions et al*, No. 06 Civ. 12949, 2007 WL

3   1695124, at*3 (S.D.N.Y. June 12, 2007)); *see also Adobe Systems Inc. v. Tilley*, No. C 09-1085

4   PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 9, 2010) ("courts in this district have also considered

5   whether the damages sought bear a plausible relationship to the plaintiff's actual damages")

6   (quotations omitted).

7        Here, the evidence shows that Jenny Tran and Beyond Beauty acted wilfully.  In addition,

8   Feiya has offered evidence establishing that a significant award is warranted as a deterrent to other

9   counterfeiters: the sale of counterfeit Feiya products has resulted in significant revenue losses,

10  threatens Feiya's reputation due to the sale of possibly dangerous products being sold under Feiya's

11  mark, and has required Feiya  to engage in expensive efforts to combat counterfeiting.  *See* Lieu

12  Supp. Decl., ¶¶ 7-16 (revenues lost and expenses of combating counterfeiting); Lu Supp. Decl. ¶¶

13  7-10 (dangers of counterfeit Feiya products).  In addition, by failing to appear, Defendants have

14  made it impossible for Feiya to establish the extent of their damages.  Under these circumstances,

15  the Court finds that Feiya's request that $400,000 in damages be awarded against Beyond Beauty

16  and Jenny Tran to be reasonable and recommends that amount be awarded in full.

17       **3.**     **Attorneys' Fees**

18       Under the Lanham Act, attorneys' fees should only be granted in "exceptional" cases.  The

19  Ninth Circuit has held that "exceptional" refers to those cases where the defendant's behavior has

20  been malicious, fraudulent, deliberate, or willful.  *See Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d

21  1378, 1384 (9th Cir. 1984); *Playboy Enters., Inc. v. Baccarat Clothing Co.*, 692 F.2d 1272, 1276

22  (9th Cir. 1982).  Willful infringement occurs when the defendant knowingly and intentionally

23  infringes on a trademark.  *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-17

24  (9th Cir. 2003).  Willfulness can also be inferred from a defendant's failure to defend.  *Philip*

25  *Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  Here, Plaintiff

26  has alleged that Defendants knowingly and intentionally infringed on Plaintiff's marks and

27  Defendants have failed to appear and defend this action.  Because Beyond Beauty and Jeny Tran's

28  conduct is willful, Plaintiff is entitled to an award of attorneys' fees.

The starting point for determining reasonable fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate. *See Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In determining a reasonable number of hours, the court must review detailed time records to determine whether the hours claimed by the applicant are adequately documented and whether any of the hours claimed by the applicant were unnecessary, duplicative or excessive. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To determine a reasonable rate for each attorney, the court must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation. *Id.* at 1210-11.

In its supplemental materials, Plaintiff has provided a declaration, including supporting time sheets, establishing that its counsel billed and charged Feiya $23,369.50 in fees for litigation against Jenny Tran and Beyond Beauty. Declaration of Daniel S. Mount in Support of Motion for Default Judgment Against Defendants ("Mount Decl."), ¶ 7. This figure is based on the following amounts: 1) 2.9 hours billed by Daniel Mount, a partner who was admitted to practice in California in 1977 and has been practicing law for over 30 years, at a rate of $515.00 per hour, that is, $412.00; 2) 16.8 hours by Daniel Fingerman, a graduate of Yale and Boston University Law School who was admitted to practice in California in 2003, at a rate of $350.00 per hour, that is $5,790.00; 3) 56.7 hours by On Lu, an associate who was admitted to practice in 2006, at a rate of $275.00 per hour, that is, $15,592.50; and 4) 7 hours by Gene Chung, an associate who was admitted to practice in California in 2009, at a rate of $225 per hour, that is, $1,575.00. *Id.* & Ex. B.

The Court has reviewed the time sheets provided by Feiya and finds that both the rates charged and time billed to be reasonable. Therefore, it is recommended that this amount be awarded in full.

### 4.     Costs

Under the Lanham Act, a plaintiff that prevails on a claim under § 1125(a) is entitled to costs. 15 U.S.C. § 1117(a). Plaintiff has prevailed on their false designation of origin claim under

§ 1125(a) and therefore are entitled to costs.   Plaintiff has provided an itemized list showing that it incurred costs in the amount of $683.20 in prosecuting its claims against Beyond Beauty and Jenny Tran.  *See* Lieu Supp. Decl., ¶ 25.  It is recommended that this amount be awarded in full.

United States District Court

For the Northern District of California

## IV.  CONCLUSION

It is recommended that the QDV Motion be DENIED on the basis that the Court lacks personal jurisdiction over QDV and Tran.  It is recommended that the request for entry of Default Judgement be GRANTED as to Beyond Beauty and Jenny Tran, and that the court award the following amounts against those defendants: 1)  statutory damages in the amount of $400,000; 2) attorneys' fees in the amount of $23,369.50; and 3) costs in the amount of $683.20.  It is further recommended that Alex Savastano be dismissed from the action with prejudice.    Finally, a permanent injunction should be entered against Beyond Beauty and Jenny Tran as follows:

Beyond Beauty, Jenny Tran, their officers, agents, servants, attorneys, employees, privies, successors, and assigns, and all persons in active concert or participation with any of them be enjoined from:

a.  Using, displaying, advertising, copying, registering, imitating, counterfeiting or infringing upon the Feiya Mark;

b.  Using or displaying the Feiya Mark or name or colorable imitations thereof as a business name, domain name, or mark in any written, oral or electronic advertisements, including on any website owned and/or controlled by Beyond Beauty or Jenny Tran.

c. Using the word "Feiya" or any other word that is confusingly similar to Feiya as or as part of any trademark, service mark, brand name, trade name, or other business or commercial designation, in connection with the sale, offering for sale, distribution, advertising or promotion of any product or service;

d.  Making representations that products or services sold by Beyond Beauty or Jenny Tran are in any way sponsored, approved, authorized or affiliated with Feiya;

e.  Otherwise infringing upon the "Feiya" name or the Feiya Mark.

Beyond Beauty and Jenny Tran shall transfer custody of all products bearing the Feiya name or Feiya Mark in their possession, custody, or control to Feiya.

Dated: August 29, 2011

_____
JOSEPH C. SPERO
United States Magistrate Judge